840 P.2d 293

**PIMA COUNTY, a body politic, Plaintiff/Appellant,**

v.

**Joseph Morand TESTIN and Angela M. Testin, Defendants/Appellees.**

**No. 2 CA–CV 91–0253.**

Court of Appeals of Arizona, Division 2, Department B.

May 14, 1992.

Review Denied Dec. 1, 1992.*

Chandler, Tullar, Udall & Redhair by S. Thomas Chandler, Tucson, for plaintiff/appellant.

Leonard, Felker, Altfeld, Nix & Krigbaum by David H. Nix and Margaret A. Krigbaum, Tucson, for defendants/appellees.

## OPINION

DRUKE, Judge.

This appeal from the trial court's granting of summary judgment questions the obligation for rent of a holdover tenant upon the expiration of a commercial lease. The following basic facts are not in dispute.

In June 1985, Joseph Testin and Angela Testin (Testin) sold the property upon which they had operated a mobile home park for many years to Pima County for $511,000. To offset what Testin believed was a below-market purchase price for the property, Pima County agreed to lease it back to Testin for three years at $100 per year. The lease further provided: "At the end of the three year term, [Pima County] may, at its sole option and discretion, continue to lease said land, improvement and

---

* Feldman, C.J., and Zlaket, J., of the Supreme Court, voted to grant review.

business to [Testin] on a year to year basis at a rent to be mutually agreed upon from year to year."

During the three-year term, Testin never paid the annual rent of $100. The lease expired on July 1, 1988. Prior to its expiration, the parties entered into negotiations to continue the lease at a mutually agreed upon rent, but negotiations were unsuccessful and broke off in April 1989. Testin did not receive notice to vacate the property until July 1989, and did so in September 1989.

Pima County's complaint against Testin sought damages for the three years of unpaid rent totalling $300; the property's reasonable rental value for the 14 months Testin remained in possession after the lease expired; the expense of relocating park tenants to whom Testin had rented after expiration of the lease; prejudgment interest on all sums due; and attorneys' fees. Testin's answer admitted the basic facts set forth above, denied the allegations pertaining to Pima County's claimed relocation damages, and also sought attorneys' fees. By counterclaim, Testin further sought damages for intentional infliction of emotional distress.

Testin then moved for summary judgment on Pima County's complaint admitting liability for the unpaid rent of $300 and agreeing that additional rent was due for the holdover period of 14 months, but only at the original rental rate of $100 per year, rather than a reasonable sum as claimed by Pima County. Testin also contended that there was no legal basis for Pima County's claim for tenant relocation expenses. In response, Pima County concurred that it was entitled to judgment for the unpaid rent of $300. It argued that summary judgment was unwarranted for the amount of rent due for the holdover period because it was entitled to a reasonable sum for rent, which sum had yet to be established, and that Testin's motion failed to set forth any facts supporting summary judgment against Pima County on its claim for tenant relocation expenses. Both parties requested attorneys' fees.

■ The trial court granted summary judgment in favor of Testin on all three issues by minute entry order which was not signed by the trial court or filed with the Clerk of the Court. A formal judgment submitted by Testin was signed and filed but it failed to include the denial of Pima County's claim for tenant relocation expenses. Although not raised by counsel, we must determine sua sponte whether we have appellate jurisdiction to consider the trial court's denial of that claim. *Cordova v. City of Tucson*, 15 Ariz.App. 469, 489 P.2d 727 (1971). An unsigned, unfiled minute entry order is not a final judgment or an appealable order for purposes of A.R.S. § 12–2101. Ariz.R.Civ.P. 58, 16 A.R.S.; *Focal Point, Inc. v. Court of Appeals of State of Ariz., Div. One*, 149 Ariz. 128, 717 P.2d 432 (1986). We therefore conclude that the propriety of the trial court's denial of the claim for tenant relocation expenses is not before us and will not be considered on appeal. Moreover, because the judgment for $300 was uncontested, we will limit our review solely to the issue of rent for the holdover period.

We begin our discussion of this issue by setting forth the relevant statutes, the first of which is A.R.S. § 33–341 regarding the termination of tenancies. Subsection D provides as follows for a tenancy such as the one here, a tenancy for a certain period:

When a tenancy is for a certain period under verbal or written agreement, and the time expires, the tenant shall surrender possession. Notice to quit or demand of possession is not then necessary.

Section 33–342, A.R.S. relates to tenants such as Testin, who do not surrender possession when a term certain expires. It provides:

When a lessee holds over and retains possession after expiration of the term of the lease without express contract with the owner, the holding over shall not operate to renew the lease for the term of the former lease, but thereafter the tenancy is from month to month.

■ In the instant case, Pima County argues for the first time on appeal that

A.R.S. § 33–342 is inapplicable because, at the expiration of the original three-year term, the lease expressly provides that it is to continue "on a year to year basis at a rent to be mutually agreed upon from year to year." We note, however, that in its opposition to Testin's motion for summary judgment, Pima County stated: "It is conceded that a tenant holding over becomes a tenant from month to month. A.R.S. § 33–342." We will not consider on appeal a theory that was not presented to the trial court. *Richter v. Dairy Queen of Southern Arizona, Inc.*, 131 Ariz. 595, 643 P.2d 508 (App.1982). We note that, in any event, assuming we were to consider this new theory, it must fail. Only an express *contract* renders the statute inapplicable. Here, the parties could not agree upon an essential element of the contract, that is, "... a rent to be mutually agreed upon from year to year." Thus, in the absence of an express contract for a renewal term, Testin became, by holding over, a month to month tenant under A.R.S. § 33–342. *See Alabam Freight Lines v. Stewart*, 70 Ariz. 140, 217 P.2d 586 (1950); *Mosher v. Sabra*, 34 Ariz. 536, 273 P. 534 (1929). The question remains, however, what monthly rent was due Pima County during the holdover period. The dearth of authority in this jurisdiction compels us to look elsewhere to resolve this issue.

■ We are in agreement with the majority of jurisdictions which hold that when a tenant continues in possession after the lease term, the landlord may elect to either treat the tenant as a trespasser, and evict him, or to hold him as a tenant. R. Powell and P. Rohan, 2 *Law of Real Property* ¶ 250 (Rev.Ed.1991); 1 *American Law of Property* § 3.33; Restatement (Second) Property *Landlord and Tenant* § 14.4 (1977). Here, it is apparent that after the original three-year lease term expired in July 1988, Pima County elected to continue the tenancy, rather than treat Testin as a trespasser. It made no effort to evict Testin and did not give notice to vacate the property until the following year.

■ We now address the nature of the tenancy following the lease's expiration, that is, whether Testin was improperly holding over or whether the holdover tenancy was with Pima County's consent. If consensual, then the terms and conditions of the holdover tenancy are governed by the provisions of the original lease, including the $100 annual rent. *Mosher v. Sabra, supra; see also* 2 *Law of Real Property* ¶ 250 "Since the periodic tenancy is in fact a continuing relationship, the general rule is that each successive period is treated as a continuation of the original tenancy, unless the parties specifically provide for a different result." Restatement § 1.5, comment c.

On the other hand, if Testin was improperly holding over,[1] Testin would potentially be liable for the reasonable rental value of the property. Restatement § 14.5. Comment a to § 14.5 sets forth the following rationale for imposing such liability:

> [W]hen a tenant improperly holds over after the termination of his lease, it is only fair and reasonable to impose upon the tenant an obligation to pay the landlord ... for the value of his continued use and occupation of the leased property. In the absence of evidence that the rental value of the leased property has increased or diminished since negotiation of the rent at the time of agreement to lease, that negotiated rental rate will determine the rate at which the holdover must pay for his continued use and occupation. Either party may, however, introduce evidence that independently establishes that the reasonable value is greater or lower than the previous rental rate and recovery will be extended or limited to that measure.

In the instant case, because the parties had commenced negotiations for a renewal term prior to the expiration of the original three-year term and continued those negotiations until April 1989, we conclude that until Pima County gave notice to vacate,

---

1. Such a tenant is sometimes referred to as a "tenant at sufferance." *See* Restatement § 14.1,

Introductory Note.

**120**

Testin continued as a tenant with Pima County's consent and was not improperly holding over. This conclusion is supported by comment j, Restatement § 14.4, which states:

> If the landlord and tenant are in the process of negotiating for a new lease when the old lease terminates and the negotiations continue, the tenant is justified in concluding that his continuation in the possession of the leased property is with the consent of the landlord and, consequently, he is not a tenant improperly holding over.

We conclude that because Testin's use and possession of the property after the original three-year lease expired in July 1988 was consensual, Testin's tenancy continued on a month to month basis on the same terms and conditions until Pima County gave notice to vacate in July 1989. Thus, for this twelve-month portion of the holdover tenancy, Pima County is entitled to a judgment against Testin for $100 and the trial court is directed to modify its original judgment accordingly. However, we are unable to determine from the record on appeal whether Testin, after receiving the notice to vacate, improperly held over until vacating the property in September 1989. It is well settled that such notice was required to terminate the month to month tenancy which commenced upon expiration of the original lease pursuant to A.R.S. § 33–342. See 2 *Law of Real Property* ¶ 223. *See also American Law of Property* § 3.35. We therefore reverse and remand this matter to the trial court to determine whether Testin improperly held over after the notice to vacate, and if so, Pima County is entitled to present evidence regarding the property's reasonable rental value for that holdover period.

FERNANDEZ, P.J., and HATHAWAY, J., concur.